## VAN CAMP *v.* STATE.

### Opinion delivered October 16, 1916.

1. CHANGE OF VENUE—EXAMINATION OF AFFIANTS—DISCRETION OF TRIAL COURT.—The action of the trial court in refusing to grant a change of venue will not be disturbed on appeal, unless a clear abuse of its discretion is shown.

2. TRIAL—EXAMINATION OF JURORS—REMARKS OF TRIAL JUDGE.—In the trial of a criminal prosecution for the crime of perjury, a remark of the trial judge, in the presence of a venireman, that the issues were the same in this prosecution as in the civil trial at which it was alleged that defendant had sworn falsely, the venireman having been present during a portion of the civil trial, *held* not to be prejudicial.

3. PERJURY—SUFFICIENCY OF THE EVIDENCE.—The evidence held sufficient to show that defendant was guilty of the crime of perjury.

4. EVIDENCE—PROSECUTION FOR PERJURY—CONSPIRACY—STATEMENTS OF CONSPIRATORS.—In a prosecution for the crime of perjury, where it appeared that defendant and one J. entered into a conspiracy to defraud S. and V., it is proper to permit S. and V. to relate any statements made by either defendant or J. in carrying out the conspiracy.

5.　EVIDENCE—PERJURY—CONSPIRACY TO DEFRAUD.—Defendant with another, agreed to purchase certain horses from witness, and conspired to defraud witness out of the same; a bill of sale was prepared and handed to defendant. *Held*, it was proper to permit witness to explain why he permitted defendant to leave the room where the negotiations were had, without receiving payment of the consideration agreed upon.

6.　PERJURY—IMPROPER INSTRUCTION—HARMLESS ERROR.—In a prosecution for perjury, a charge to the jury that a conviction may be had upon the uncorroborated testimony of a single witness, while erroneous, will not be held prejudicial, where more than one witness testified concerning the falsity of the defendants' statements.

Appeal from Garland Circuit Court; *Scott Wood*, Judge; affirmed.

*M. S. & Arthur Cobb*, for appellant.

1.　The petition for change of venue should have been granted. The court abused its discretion in denying it. 36 Ark. 286; 54 *Id*. 243.

2.　In the examination of Wm. Sumpter, the remarks of the court and its instruction were prejudicial. In making the statement and in its instruction, the court assumed facts which were solely for the consideration of the jury. 43 Ark. 289; 45 *Id*. 165; 53 *Id*. 381; 55 *Id*. 244; 58 *Id*. 108; 25 S. W. 282.

3.　Testimony as to conversations had with John E. Jones relative to the transaction in the absence of appellant, was not admissible and prejudicial. It is useless to define *res gestae* or cite authorities.

4.　It was error to permit the witness, Strite, to detail the rules of the Racing Association, and then refuse to let the witness say whether or not he relied on those rules to prove that he did not sell "Encore."

5.　To constitute perjury, the swearing must be absolute, as well as false and material. Underhill on Ev., p. 761; Elliott on Ev., Vol. 4, p. 385; 55 Ark. 529; 85 *Id*. 195. Instruction No. 2 given was erroneous.

6.　Instruction No. 3 is inherently wrong. 53 Ark. 395. Corroboration of the falsity of the evidence is always required. 51 Ark. 138; 88 *Id*. 115; 53 *Id*. 395; 77 *Id*. 455; 91 *Id*. 505.

7.   The court erred in permitting evidence as to the value of the horses and in refusing instruction "A" asked by defendant.   Also in refusing ".B," etc.

8.   The verdict is contrary to the evidence.

*Wallace Davis*, Attorney General, and *Hamilton Moses*, Assistant, for appellee.

1.   The petition for a change of venue was properly overruled.   No abuse of discretion is shown or appears.   98 Ark. 139; 76 *Id.* 279; 80 *Id.* 361; 107 *Id.* 30; 120 *Id.* 309.

2.   There is no error in the court's charge.   No. 2 is correct and No. 3 is copied from 53 Ark. 398; 88 *Id.* 117; 91 *Id.* 509.   Strite was fully corroborated.   91 Ark. 509.

3.   There was no error in the court's action on instructions 5a and 5b.   58 Ark. 353; 54 *Id.* 489.   Courts are not required to repeat instructions already given. 101 Ark. 120; 101 *Id.* 569; 103 *Id.* 352.

4.   There was no error in the admission of evidence.   43 Ark. 99; 88 *Id.* 579; 100 *Id.* 269.   The conversations were intimately connected with the transaction; they emanated from the trade and were a part of the crime speaking for itself.   43 Ark. 99; 88 *Id.* 579; 100 *Id.* 269.   As to the Racing Rules, appellant can not complain.   The explanation was drawn from the witness on cross-examination.

5.   There was no error in the form of the verdict. 96 Ark. 196; 95 *Id.* 168; 76 *Id.* 550.   The objection can not be raised for the first time on appeal.   26 Ark. 536; 28 *Id.* 188.

6.   The verdict was responsive to the testimony. The State fully substantiated every charge in the indictment and proved every material ingredient of perjury.

McCULLOCH, C. J.   This is an appeal from a judgment of the circuit court of Garland County convicting appellant of the crime of perjury, which said offense was alleged in the indictment to have been committed by false swearing in a civil suit tried in the Garland Cir-

cuit Court wherein appellant Van Camp was plaintiff, and J. T. Strite and A. L. Valentine were defendants.

Strite and Valentine were the owners of four horses said to be racers, and they brought their horses to the city of Hot Springs to attend races held there in the month of March, 1916. Appellant and one Jones resided in Hot Springs, and they applied to Strite and Valentine to get them badges which would pass them to the race track so that they could encourage betting. During the progress of the races, negotiations were opened up by appellant and Jones with Strite and Valentine for the purchase of the horses, and an agreement was finally reached for the sale of the horses or some of them to appellant and Jones. There is a conflict in the testimony concerning the terms of the sale. Strite and Valentine testified that they agreed to sell only three of the horses, named, respectively, Envy, Cooster and Cherry Seed, and that the other horse, named Encore, was not to be included in the trade. They also testified that only the horses were to be sold, and none of the racing equipments or the covers or bridles or saddles were to be included. Appellant and Jones both testified that the sale was to include all four of the horses and the blankets, saddles and bridles and other equipments. The price agreed upon was $1,500, and there is no dispute about that.

It appears from the testimony that the terms of the trade were finally agreed upon on a certain evening, and that appellant was to prepare the bill of sale, and the parties were to meet the next morning for the purpose of consummating the sale. They met the next morning and in the meantime appellant had prepared the bill of sale, which Strite and Valentine read over carefully, and they testify that the writing did not include the name of the horse Encore or the other property, except the names of the other three horses. According to the testimony of Strite and Valentine, Jones left the parties to go to one of the banks to get the remainder of the money he needed to make the payment of $1,500, and on his return they repaired to the office of a

justice of the peace, and when they reached there, Strite and Valentine signed the instrument, and their signatures were witnessed by the justice of the peace and a constable who happened to be present.

There is a sharp conflict in the testimony as to what occurred immediately afterward concerning the payment of the money. Strite and Valentine both testified that as soon as the bill of sale was signed, appellant picked it up and left the room; that Jones ran his hand into his pocket and walked into the next room, and when Valentine and Strite followed him Jones remarked that Van Camp wanted a commission for selling the horses; that they refused to allow any commission, and that Jones refused to pay the money except in the presence of appellant. Each of these men testified that the agreed purchase price was not paid then or at any other time. On the other hand, appellant and Jones each testified that the money was handed over to Strite and Valentine in the office of the justice of the peace, and that that ended the transaction. The bill of sale as exhibited at the trial shows that the horse Encore and the blankets, bridles, saddles, etc., were included therein, but Strite and Valentine testified that those things were not in the bill of sale at the time it was signed. The testimony of the justice of the peace and constable to some extent corroborates the testimony of appellant and Jones, but they do not swear positively that the money was actually paid over in the office or that the writing included the horse Encore or the other items in dispute. Strite and Valentine testified that after making considerable effort, without success, to get appellant and Jones together so that they could get the money, they went out to the race track where the horses were, and that later appellant came out there with an officer and tried to get the horses. They refused to give up the horses and a replevin suit was brought in the name of appellant.

In the trial of that cause in the circuit court, appellant testified as a witness and his testimony was

substantially the same as that given in the trial of the present case. He testified in both trials that the horse Encore and the blankets, saddles, bridles, etc., were included in the trade and were described in the bill of sale, and that the price, $1,500, was paid in the office of the justice of the peace. The charge of perjury set forth in the indictment is predicated on the testimony given in the trial of the civil case which is alleged to be false. There is little, if any, controversy as to the substance of the testimony given by appellant in the trial of the civil case, the real controversy being over the question of the truth or falsity of that testimony concerning the alleged sale of the horses.

(1) Appellant filed a petition for a change of venue, supported by the affidavits of three persons, all of whom were examined in open court except one. We must, of course, treat the one who was not examined as being a credible person (*Whitehead* v. *State*, 121 Ark. 390), and the testimony must be reviewed in order to determine whether or not the court abused its discretion in finding that none of the other affiants were credible persons within the meaning of the statute. The trial court is, of course, in better position than we are to determine a question of this sort, and it has been the invariable rule here to uphold the trial court's exercise of discretion in such matters unless an abuse thereof has been shown. All of the affiants were examined at considerable length concerning their knowledge of the state of feeling toward appellant, and it was shown that many of the witnesses had but little, if any, knowledge of the feeling outside of the city of Hot Springs. Of course, it is easy to see that there was no abuse of discretion by the court in holding that those persons were not credible within the meaning of the statute. Several of the affiants, however, showed a knowledge to some extent outside of the city of Hot Springs. When the fact is considered that the transaction, out of which the civil action arose, occurred less than a month before the trial of the present case, thereby giving very little time for the incident to become sufficiently notorious to

arouse the prejudice of the inhabitants of the whole county to the extent that a fair and impartial trial could not be obtained, together with the somewhat vague and uncertain statements of the witnesses concerning their actual knowledge of the condition of public feeling outside of the city of Hot Springs, we can not say that there was an abuse of the court's discretion. The testimony of the affiants does not in fact make out a case of such general prejudice existing in the minds of the inhabitants of Garland County as would prevent a fair and impartial trial, and the court was, we think, justified in reaching the conclusion that they made the affidavits upon insufficient information on the subject and that they were not to be treated as credible persons. We decline, therefore, to disturb the ruling of the court in refusing to grant the change of venue.

The assignments of error are very numerous and many of them are not of sufficient importance to call for discussion. Only those which are deemed important will therefore be mentioned.

(2) In the examination of veniremen concerning their qualifications to serve as jurors in the case, there arose a controversy between counsel for the State and for the defendant concerning certain questions to be propounded to one William Sumpter who had been summoned as a juror. A colloquy took place between the trial judge and counsel in the case in which the court made the following statement: "The issue there (in the civil suit) was practically the same in a way as it would be here because one side there claimed that he bought the four horses and the other side claimed that he did not." Sumpter, it seems, had been present during a part of the trial of the civil action, and this statement was made in response to questions from counsel as to how far they could go in interrogating Sumpter concerning impressions formed from what he had heard in the trial of the other case. Counsel for appellant excepted to the remark made by the court. We do not see how the remark of the court could have

had any prejudicial effect for, as was subsequently developed in the trial, the principal issue turned out to be the same in both cases, that is to say, whether or not the bill of sale included four horses or only three. It does not appear from the record that any jurors had been accepted at that time, and that any of them were present to hear this remark of the court; but even if they were, we do not think that it had any prejudicial effect for the issues were, to the extent indicated in the court's remark, the same in both trials. There was, as before stated, no controversy in the testimony as to what the issues were in the civil case, nor was there any substantial controversy as to what the testimony of appellant was upon those issues.

(3) It is contended by appellant that the evidence in the present case does not show definitely that he testified in the former case that the sum of $1,500 was actually paid over to Strite and Valentine by Jones, but we are of the opinion that the testimony does show that conclusively. It is true appellant stated in his testimony in the civil case that the money was not actually counted in his presence, but he stated that Jones went off to the bank to get the balance of the money, and that after his return they went to the office of the justice of the peace where the bill of sale was signed, and that Jones then handed over to Strite and Valentine a large roll of money containing bills of $20 and other denominations, and that it was counted and accepted by Strite and Valentine. The effect of his testimony was that the agreed price of $1,500 was in fact paid in his presence. The court, therefore, might very well have eliminated from the consideration of the jury all question as to what the issues were in the civil case, and what the testimony of appellant was concerning those issues, and limited the consideration of the jury to the sole question in the case, whether or not the testimony so given was true or false. That was really the only issue in the present case, and the jury in finding appellant guilty necessarily reached the conclusion that the horse Encore and the saddles, bridles, blankets,

etc., were not embraced in the bill of sale, and that the price was never paid over to Strite and Valentine, and that the testimony of appellant was therefore false.

(4)  Appellant objected to the testimony of Strite and Valentine concerning the statements made to them by Jones in appellant's absence, the statements claimed by Strite and Valentine to have been made by Jones when he went off into the rooms adjoining the office of the justice of the peace.  The statement of Jones, to which they testified, was that appellant claimed a commission, and that he (Jones) would not pay over the money in the absence of appellant.  The testimony of Strite and Valentine was sufficient to establish a conspiracy on the part of Jones and appellant to swindle Strite and Valentine out of their property, and that the alleged statements of Jones were made pursuant to that conspiracy and prior to its consummation.  One of the issues in the case was whether or not the money was in fact paid over, and it was proper to permit the witnesses to relate any statements made by either appellant or Jones in carrying out the conspiracy.

(5)  Another exception relates to the ruling of the court in permitting witness Strite to explain certain rules of the racing association.  The statement of the witness was given in response to a question propounded on cross-examination as to why the witness had permitted appellant to leave the room with the bill of sale in his possession before the money was paid, and the substance of the statement was that there were certain rules of the racing association which provided for an adjustment of all differences between its patrons and to exclude from the track all persons found to be guilty of disreputable practices, and that the witness relied upon these rules as a protection against fraud and that such reliance induced him to permit the appellant to take the bill of sale away with him before the money was actually paid.  This is the substance of the explanation given by the witness concerning the rules of the association, and we think that the court was justified in allowing him to make the statement in response

to the attack made on his credibility on account of his admission that he had let appellant take the bill of sale before the money was paid.

Counsel for appellant then asked the witness whether or not he relied upon the rules of the association for a conviction in the case, and to prove that he did not sell the fourth horse, Encore, but the court refused to permit the cross-examination to proceed any further along that line, and we are of the opinion that the ruling of the court was correct. The question was really frivolous and the court properly stopped the cross-examination along that line.

Objection was made to an instruction given by the court submitting the question whether or not appellant purchased from Strite and Valentine four horses, naming them, "or any other horses," it being contended that the undisputed testimony shows that three horses were purchased, and that that question should not have been submitted to the jury. It may be said, in the first place, that there is no dispute about the negotiations for the sale of the three horses nor for the price to be paid, and that there could not be any prejudice in that part of the instruction objected to, but what the court meant to submit there was whether the purchase of any horses at all had in fact been consummated by payment of the money. There was a sharp conflict in the testimony as to whether or not there had been a consummation of the sale which the undisputed testimony showed had been negotiated. That was one of the issues in the case which affected the question of the truth or falsity of appellant's alleged testimony.

(6) Error of the court is also assigned in giving an instruction which reads as follows: "In order to convict defendant for perjury, it is not necessary for the State to make proof by any certain number of witnesses, but a conviction may be had upon any legal evidence of a nature and amount sufficient to disprove, beyond a reasonable doubt, the testimony upon which perjury is assigned." The contention is that the instruction permits a conviction to be had upon the uncorroborated

testimony of one witness. That criticism of the instruction is, we think, sound, but it had no prejudicial effect in the present case for the reason that two witnesses testified concerning the falsity of appellant's testimony, and that was sufficient to sustain a conviction if the testimony satisfied the jury beyond a reasonable doubt of the guilt of the defendant. Conceding, therefore, the instruction to be erroneous, it is not prejudicial and does not call for a reversal. *Brooks* v. *State*, 91 Ark. 505.

It is insisted that the evidence is not sufficient to justify a conviction—that the testimony of Strite and Valentine was of such a character that it ought to have been entirely disregarded by the jury. We think, however, that that was a question for the jury, and that there was sufficient evidence to sustain the conviction.

The judgment is therefore affirmed.